175 P.3d 801

STATE of Idaho, Plaintiff–Respondent,

v.

Reggie TIETSORT, Defendant–Appellant.

No. 32166.

Court of Appeals of Idaho.

Dec. 18, 2007.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant. Diane M. Walker argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé argued.

LANSING, Judge.

This appeal challenges the district court's denial of Reggie Tietsort's motion to suppress evidence that was found at his residence before and after the issuance of a search warrant. The principal inquiry is whether the warrant was invalid as the product of prior unlawful searches. We vacate the district court's order denying Tietsort's motion and remand for further fact-finding.

## I.

### FACTUAL & PROCEDURAL BACKGROUND

In November 2004, detectives Sarrazolla and Furniss of the Garden City Police Department were investigating the theft of a blue Pontiac. They had received a tip that the vehicle might be located at a rural residence in Boise County. The detectives went to this property and knocked on the door of the house. Although the detectives heard someone inside, no one answered the knock. The detectives then walked around the property, including the back of the house and around a nearby barn. The barn was at least partially enclosed on three sides but open in the front. While the detectives did not find the stolen vehicle they were searching for, they saw a red Ford Focus and a white Cargo Plus utility trailer parked in the barn. The detectives later testified that they could see the trailer's serial number from the driveway, but they admitted that they also walked into the barn to obtain the license plate and vehicle identification numbers for the Focus. A computer check disclosed to the detectives that the Focus and the utility trailer had been reported stolen.

Detectives Sarrazolla and Furniss left the property to request assistance from the Boise County sheriff's office, and returned about fifteen minutes later with two Boise County deputies. The deputies (and perhaps Furniss) remained on or near the entrance to the driveway while Sarrazolla left to apply for a search warrant. Seeing that the police had returned, Tietsort emerged from his house ten or fifteen minutes later and conversed with the deputies. The deputies explained that there were vehicles on the property that were believed to be stolen and that they were waiting for a search warrant. They asked Tietsort for permission to search the premises, and he responded that he would give consent. One of the deputies was then sent to fetch Detective Sarrazolla, who halted his attempt to secure a warrant. Sarrazolla returned to the property shortly thereafter, and he informed Tietsort that the detectives had discovered the stolen Ford and utility trailer on the property. Tietsort said that a friend had left those items a month before. At Sarrazolla's request, approximately one hour after the detectives' initial arrival, Tietsort signed a written consent to search all barns and vehicles on the property. He declined, however, to permit a search of his house. The consent search of outbuildings yielded evidence of additional stolen items, including several snowmobiles and another trailer.

Based on this evidence, the officers obtained a warrant to search the interior of the vehicles and the house for personal property that reportedly had been stolen with the vehicles. While executing the warrant, they discovered methamphetamine, marijuana, paraphernalia, and additional stolen property, including firearms. The manufacturer identification number on some of the stolen property had been defaced. Tietsort was charged with possession of methamphetamine with the intent to deliver, Idaho Code § 37-2732(a)(1)(A); possession of marijuana with the intent to deliver, I.C. § 37-2732(a)(1)(B); two counts of grand theft of a firearm, I.C. § 18-2407(1)(b)(6); seven counts of defacing, altering, or obliterating a manufacturer's identification number, I.C. § 18-2410; five counts of misdemeanor possession of a legend drug, I.C. § 54-1732(c); and misdemeanor possession of drug paraphernalia, I.C. § 37-2734A. He was not charged with theft of the vehicles in his barn.

Tietsort filed a motion to suppress all evidence found on his property on the day of his arrest, invoking both federal and Idaho constitutional protections. The district court denied the motion, and[1] Tietsort then condi-

1. Tietsort's motion also requested suppression of     evidence collected in another warrantless search

tionally pleaded guilty to one count each of possession of methamphetamine with the intent to deliver; grand theft of a firearm; and defacing, altering, or obliterating a manufacturer's identification number, reserving the right to appeal the denial of his suppression motion. In this appeal, he argues that the detectives' initial search in and around his barn was unconstitutional and tainted both his subsequent consent and the warrant. He also asserts that his consent was tainted because he was unlawfully detained by the officers before the consent was given.

## II.

## ANALYSIS

On review of a decision to grant or deny a motion to suppress evidence, we defer to the trial court's findings of fact unless they are clearly erroneous. *State v. Hawkins,* 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). Findings are not clearly erroneous if they are supported by substantial competent evidence. *State v. Jones,* 123 Idaho 315, 318, 847 P.2d 1176, 1179 (Ct.App.1993). The determination whether, on the facts found, a search is reasonable and therefore complies with constitutional standards, is a question of law over which we exercise free review. *Hawkins,* 131 Idaho at 400, 958 P.2d at 26.

■ The Fourth Amendment to the United States Constitution and Article I, Section 17 of the Idaho Constitution each guarantee "[t]he right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures." These provisions protect a person's expectation of privacy which society is prepared to recognize as reasonable. *Oliver v. United States,* 466 U.S. 170, 177, 104 S.Ct. 1735, 1740, 80 L.Ed.2d 214, 223 (1984); *State v. Donato,* 135 Idaho 469, 471, 20 P.3d 5, 7 (2001); *State v. Webb,* 130 Idaho 462, 465, 467, 943 P.2d 52, 55, 57 (1997). These constitutional safeguards of the privacy of "houses" extend to the curtilage of a residence, which is the area or buildings immediately adjacent to a home that a reasonable person would expect to remain private, even though it is accessible to the public. *United States v.*

that was conducted several days later. The dis-

*Dunn,* 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987); *Webb,* 130 Idaho at 465, 943 P.2d at 57; *State v. Cada,* 129 Idaho 224, 923 P.2d 469 (Ct.App.1996).

Interpreting the Idaho Constitution, our courts define "curtilage" more broadly than does the United States Supreme Court for Fourth Amendment purposes, to include outbuildings and drives within the areas protected from unreasonable searches. *Webb,* 130 Idaho at 467, 943 P.2d at 57; *Cada,* 129 Idaho at 230–32, 923 P.2d at 475–77.

■ Even under Idaho constitutional jurisprudence, however, not all entries by law enforcement officers onto the curtilage of a home infringe upon constitutionally protected expectations of privacy. Under the open view doctrine, when the police come onto private property to conduct an investigation or for some other legitimate purpose and restrict their movements to places where ordinary visitors could be expected to go, observations from such vantage points are lawful. *Id.; State v. Clark,* 124 Idaho 308, 312–13, 859 P.2d 344, 348–49 (Ct.App.1993); *State v. Rigoulot,* 123 Idaho 267, 272, 846 P.2d 918, 923 (Ct.App.1992). Direct access routes to the house, including driveways, parking areas, and pathways to the entry, are areas to which the public is impliedly invited. Police officers restricting their activity to such areas are permitted the same intrusion and the same level of observation as would be expected from a reasonably respectful citizen. *Cada,* 129 Idaho at 232, 923 P.2d at 477; *Clark,* 124 Idaho at 313, 859 P.2d at 349. The scope of the open view doctrine is limited, however, by the implied invitation to enter. Consequently, "a substantial and unreasonable departure from the normal access route will exceed the scope of the implied invitation and intrude upon a constitutionally protected privacy interest." *Clark,* 124 Idaho at 314, 859 P.2d at 350.

■ What is lawfully seen in open view may furnish probable cause for a warrant. *Doe v. State,* 131 Idaho 851, 854, 965 P.2d 816, 819 (1998). To be valid, a search warrant must be supported by facts showing

trict court granted that portion of the motion.

probable cause to believe that evidence or fruits of a crime may be found in a particular place. *State v. Josephson*, 123 Idaho 790, 792–93, 852 P.2d 1387, 1389–90 (1993). When, as here, a warrant is predicated on information discovered during a previous warrantless search, the State must show that the evidence supporting the warrant was not itself unlawfully obtained. See *State v. Johnson*, 110 Idaho 516, 526, 716 P.2d 1288, 1298 (1986). That is, the State bears the burden of demonstrating that the initial, warrantless search fell within a well-recognized exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–76 (1971); *Halen v. State*, 136 Idaho 829, 833, 41 P.3d 257, 261 (2002); *State v. Prewitt*, 136 Idaho 547, 550, 38 P.3d 126, 129 (Ct.App. 2001); *State v. Slater*, 133 Idaho 882, 886, 994 P.2d 625, 629 (Ct.App.1999). When a search warrant has been based in part on unlawfully obtained evidence, it is invalid unless the remaining evidence that was presented in the warrant application contains adequate facts to show probable cause for the search. *State v. Revenaugh*, 133 Idaho 774, 779, 992 P.2d 769, 774 (1999); *State v. Buterbaugh*, 138 Idaho 96, 101, 57 P.3d 807, 812 (Ct.App.2002).

There were three searches in this case: (1) the initial search when the police walked around the curtilage of the home and went into the barn; (2) the search of outbuildings and vehicles conducted with Tietsort's consent; and (3) the search of the interior of the house and vehicles pursuant to the warrant. Tietsort contends that all three of these

searches were unlawful. He maintains that the first was illegal because police entered the barn and other areas of the curtilage to which visitors are not impliedly invited, that the second search was unlawful because Tietsort's consent was involuntary and was tainted by the initial unlawful search, and that the third search was unlawful because the warrant was likewise tainted by the prior illegalities. The State acknowledges that the entry into the barn on the first search violated Tietsort's constitutionally protected privacy interest, and because the license and vehicle identification number of the Ford Focus could be seen only from inside the barn, that information was acquired illegally. As there was no testimony that the officers could read the vehicle identification number or license number on the trailer from a position outside the barn, that evidence also must be deemed fruit of the unlawful entry into the barn. The State maintains, however, that the detectives lawfully observed the manufacturer's serial number on the utility trailer from a position outside the barn, thereby gaining information that identified the trailer as stolen and provided probable cause for a search warrant. The State also contends that Tietsort's consent to the second search was lawfully obtained and therefore evidence found in that search also supported the warrant for the third search.

■ We conclude that the disposition of these opposing contentions turns upon a single issue-whether the officers lawfully observed in open view the serial number on the utility trailer.[2] This question as to whether

**2.** Tietsort argues that we should not consider the open view doctrine because the State conceded below that all of the officers' observations during the initial search were unlawful. While the prosecutor did acknowledge that entry of the barn during the initial search was impermissible, she maintained on several occasions that the detectives lawfully could see the trailer's serial number in open view from the driveway and presented the detectives' testimony on this point. Later during closing arguments when defense counsel argued that the serial number was not visible from the driveway, the district court interrupted, stating that it was the court's understanding that "the state is not relying on any of that." Defense counsel explained that in light of the prosecutor's arguments, it was necessary to articulate why the prosecutor's belief that the officer could view the

trailer's identification from the driveway was erroneous. At the end of the hearing, the prosecutor argued that any prior illegality was attenuated by Tietsort's consent, and she did not then reiterate the open view argument. The statements made by the prosecutor during the closing argument are confusing and did not clearly articulate whether the State was conceding that all evidence obtained during the first search was gained by an unlawful intrusion. During the evidentiary phase of the hearing, however, when Tietsort had the opportunity to respond with evidence, it is clear that the prosecutor was maintaining that the observation of the trailer's serial number was lawful. While the confusing articulation of the scope of the State's concession during the closing argument gives us pause, particularly in light of the apparent confusion of

the officers read the trailer's serial number from a lawful vantage point affects the validity of Tietsort's subsequent consent to another search and, consequently, also affects the validity of the warrant that was issued on the basis of evidence found in the first two searches. Unfortunately, the district court did not make factual findings on this point. We are therefore compelled to remand this case for the district court to make findings based upon the conflicting evidence in the record. Before we do so, we shall explain why the case converges upon this question.

It is readily apparent that if the consent given by Tietsort for the second search was valid, the warrant was valid, for evidence found in the second search amply provided probable cause for the search warrant. If all evidence found in the first search was unlawfully acquired however, and Tietsort's consent was tainted by that preceding illegality, then there was no evidence that was not gleaned by violation of Tietsort's constitutional rights to support the warrant application. That is, if the serial number was unlawfully acquired, then the consent may fall because it was derived through exploitation of that illegality, and if the consent falls then the evidence from the second search could not properly be used to support the warrant. The State having identified no other lawfully acquired evidence supporting the warrant application, the warrant would be invalid also, and all evidence derived from the three searches would have to be suppressed.

▆ When police conduct has violated an accused's constitutional rights before he consents to a search, the State must prove that the consent was not procured by exploitation of the previous illegality. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963); *State v. Zavala*, 134 Idaho 532, 5 P.3d 993 (Ct.App. 2000). This requirement is well illustrated by two United States Supreme Court decisions, *Wong Sun*, and *Brown v. Illinois*, 422

U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). In *Wong Sun*, federal agents forced entry into defendant Toy's premises where he operated a laundry business and had his living quarters. They followed him down a hall to his bedroom and, without probable cause, placed him under arrest. The agents then elicited oral statements from Toy that implicated him in the sale of narcotics and led the agents to question another person, defendant Yee, who possessed heroin and told the agents that Toy had delivered heroin to Yee. The United States Supreme Court ruled that Toy's declarations and the contraband taken from Yee were fruits of the agents' illegal entry into Toy's premises and his illegal arrest, and should not have been admitted into evidence against Toy. The Court held that Toy's statements were not "sufficiently an act of free will to purge the primary taint of the unlawful invasion." *Id.* at 486, 83 S.Ct. at 416–17, 9 L.Ed.2d at 454. The Court further explained:

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Id.* at 487–88, 83 S.Ct. at 417, 9 L.Ed.2d at 455.

The analysis was carried forward in *Brown*, where officers broke into the defendant's residence and arrested him without probable cause. They then interrogated him at the police station after first advising him of his *Miranda* rights.[3] During this interrogation, Brown admitted involvement in a murder. The question presented to the Supreme Court was whether the *Miranda* warnings administered at the police station

---

defense counsel and the court about what arguments the State was relying upon, we are not persuaded that the State conceded anything other than the illegal entry into the barn. Even if defense counsel reasonably believed that a broader concession was made during closing argument, it could not have affected the defendant's

presentation of evidence, which had already been completed.

3. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

broke the causal connection between the illegal arrest and the statements so that the defendant's confession was sufficiently an act of free will to purge the taint of the unlawful arrest. The Court held that the *Miranda* warnings, by themselves, could not be assumed to attenuate the taint of an unconstitutional arrest. *Brown* at 602–03, 95 S.Ct. at 2261, 45 L.Ed.2d at 426–27. The Court noted that the *Miranda* warnings were a prophylactic rule employed to protect Fifth Amendment rights against the compulsion inherent in custodial interrogations, while the exclusionary rule, when applied to Fourth Amendment violations, "serves interests and policies that are distinct from those its serves under the Fifth." *Id.* at 602, 95 S.Ct. at 2261, 45 L.Ed.2d at 426. The Court continued:

> Thus even if the statements in this case were found to be voluntary under the Fifth Amendment, the Fourth Amendment issue remains. In order for the causal chain, between the illegal arrest and the statements made subsequent thereto, to be broken, *Wong Sun* requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be "sufficiently an act of free will to purge the primary taint." *Wong Sun*, 371 U.S. at 486, 83 S.Ct. at 416[–17, 9 L.Ed.2d at 454].

*Id.* at 601–02, 95 S.Ct. at 2261, 45 L.Ed.2d at 426. The Court said that in considering whether a confession was the product of a free will under *Wong Sun*, the administration of *Miranda* warnings is an important factor, but other factors to be considered include the temporal proximity of the police misconduct and the confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *Id.* at 603–04, 95 S.Ct. at 2261–62, 45 L.Ed.2d at 426–27.

Although Tietsort's oral declaration in the present case was a consent to a search rather than a confession, the same standards apply, requiring the State to prove that the consent was voluntary and not derived by exploitation of an earlier violation of Tietsort's constitutional rights. *See, e.g., State v. Kerley,* 134 Idaho 870, 874–75, 11 P.3d 489, 493–94 (Ct.App.2000) (holding that the defendant's consent to the removal of an object from his pants pocket must be suppressed as the product of the officer's preceding unlawful frisk); *Zavala,* 134 Idaho at 536–37, 5 P.3d at 997–98 (remanding for the district court to determine whether the defendant's consent to search of his automobile was voluntary and sufficiently attenuated to dissipate the taint of a preceding illegal detention).

In the case before us, the district court made a factual finding, which is supported by the evidence, that before Tietsort consented to a search of outbuildings and vehicles, the officers told him that they were waiting for a search warrant to arrive. The district court also found that Tietsort's consent to a search of his outbuildings and vehicles was voluntary. In making this finding of voluntariness, however, the court did not consider whether the officers' assertions to Tietsort that they had discovered stolen items and could obtain a search warrant constituted an exploitation of any illegality in the prior search that tainted the consent and rendered it involuntary.

A consent is not rendered invalid merely because an officer has said that a warrant will be sought if consent is refused, *State v. Smith,* 144 Idaho 482, 163 P.3d 1194 (2007); *State v. Fee,* 135 Idaho 857, 863, 26 P.3d 40, 46 (Ct.App.2001); *State v. Kilby,* 130 Idaho 747, 947 P.2d 420, (Ct.App.1997), but a false representation that the officer possesses a warrant amounts to coercion. *Bumper v. North Carolina,* 391 U.S. 543, 548–50, 88 S.Ct. 1788, 1791–92, 20 L.Ed.2d 797, 802–03(1968). The State's burden to show that consent was freely and voluntarily given cannot be met by "showing no more than acquiescence to a claim of lawful authority." *Id.* at 549, 88 S.Ct. at 1792, 20 L.Ed.2d at 802. The *Bumper* opinion explains: "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion-albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Id.* at 550, 88 S.Ct. at 1792, 20 L.Ed.2d at 803. Here, officers did not falsely represent that they possessed a warrant, but they did assert the ability and intent to obtain one. An officer's false, erro-

neous or baseless representation of the ability to obtain a warrant weighs against a finding of voluntariness, *Smith,* 144 Idaho at 489, 163 P.3d at 1201; *Fee,* 135 Idaho at 863, 26 P.3d at 46; *State v. Abeyta,* 131 Idaho 704, 708–09, 963 P.2d 387, 391–92 (Ct.App.1998). *See also Whitener v. State,* 390 So.2d 1136 (Ala.Crim.App.1980); *United States v. Momodu,* 909 F.Supp. 1571 (N.D.Ga.1995); *United States v. Anderson,* 752 F.Supp. 565, 568 (E.D.N.Y.1990); *State v. McClead,* 211 W.Va. 515, 566 S.E.2d 652 (2002).

█ Further, the officers notified Tietsort that stolen property had already been found before they secured his consent to a second search. Confronting a suspect with evidence found in an unlawful search may constitute an exploitation of the prior illegality that taints the consent thereby induced. *See United States v. Oaxaca,* 233 F.3d 1154, 1158 (9th Cir.2000) ("[W]here, as here, the police confront a person with contraband that they have illegally found, the subsequent consent to search is fruit of the Government action."); *United States v. Thomas,* 955 F.2d 207 (4th Cir.1992) (consents to searches of motel room given after police had already illegally entered were not valid because persons consenting were aware that the police had already entered the room); *United States v. Taheri,* 648 F.2d 598 (9th Cir.1981) (where police confronted defendant with the evidence they had discovered illegally to secure his consent to further search, the evidence found in the consensual search had to be excluded because consent was premised on illegality); *United States v. Klopfenstine,* 673 F.Supp. 356 (W.D.Mo.1987) (consent was tainted when the defendant did not consent to the search until he was presented with evidence that was illegally obtained); *State v. Warsaw,* 125 N.M. 8, 956 P.2d 139 (Ct.App. 1997) (consent was tainted by prior illegal search when, before defendant consented, police officers described to the defendant the evidence obtained during the illegal search); *State v. Doyle,* 186 Or.App. 504, 63 P.3d 1253 (2003) (exploitation of prior unlawful search when prior to consent the officer confronted the defendant with evidence that had been found). *Cf. State v. Luna,* 126 Idaho 235, 880 P.2d 265 (Ct.App.1994) (statements made by the defendant as a result of being confronted by the police with the fruits of an illegal search constitute the fruit of the poisonous tree and are inadmissible in evidence in a criminal prosecution).

In this case, all information that the officers collected while inside Tietsort's barn during the initial search was obtained in violation of his constitutional rights. Therefore, the officers' assertion that they could secure a warrant was false unless the detectives saw at least the utility trailer's serial number in open view from a vantage point that they lawfully occupied. This misrepresentation would undermine the voluntariness of Tietsort's consent, and the officers' report to Tietsort that stolen property had been found would amount to such an exploitation of the illegal search as to fatally taint the consent.

The district court did not perceive that this issue was critical to the validity of Tietsort's consent. Without discussing the officers' representations that they had seen stolen items and could get a warrant, the district court held that Tietsort's consent was voluntary because he approached the officers of his own volition, engaged them in conversation, and gave consent to search the outbuildings while explicitly withholding consent to search the house, and because considerable time had elapsed between the initial search and Tietsort's contact with the officers. We defer to a trial court's finding that a consent was voluntary if it is a reasonable inference that may be drawn from the record, *State v. Jaborra,* 143 Idaho 94, 97–98, 137 P.3d 481, 484–85 (Ct.App.2006). Here, however, unless the police legally acquired the trailer's serial number, they had not lawfully discovered stolen property and they did not have probable cause for a warrant. The validity of Tietsort's consent could not properly be determined without first determining the propriety of the representations made to Tietsort by the officers. That question, in turn, depends upon whether the detectives were in an area where it was permissible for them to be-that is, an area that would be occupied by a reasonably respectful visitor-when they read the serial number on the utility trailer. *Cf. People v. Alberti,* 111 A.D.2d 860, 490 N.Y.S.2d 261 (App.Div.1985) (any possible il-

legality connected with officers' warrantless entry did not taint evidence observed within open view).

The evidence on this point is disputed. At the hearing on Tietsort's suppression motion, Detective Furniss testified that, from the driveway, he could discern a serial number on the cargo trailer. On cross-examination, he indicated that this number, which was black and about one and a half inches tall, was on the front of the trailer. When presented with photographs of the front of the trailer, however, he acknowledged that the number was not visible. When shown another photograph of the VIN plate, he stated that the serial number was not represented in the photograph, but that it was in large print below the plate. He also acknowledged that it may have been on the back of the trailer, which would not have been visible from outside of the barn. Detective Sarrazolla testified that he remembered seeing a small vehicle identification number plate on the side of the trailer, and acknowledged that a photograph of the front of the trailer did not show the VIN plate or any black lettering. The district court must resolve these discrepancies and make factual determinations about what the officers could or could not see within open view.[4]

We must also briefly discuss Tietsort's alternative argument that his consent was tainted because it was given while he was unlawfully detained. Where police illegally arrest an individual and contemporaneously procure his consent to a search, the events are so intertwined that the consent will not expunge the taint of the illegal arrest. *State v. Weber,* 116 Idaho 449, 453, 776 P.2d 458, 462 (1989); *State v. Barwick,* 94 Idaho 139, 142, 483 P.2d 670, 673 (1971). For purposes of this rule, there is no distinction between an illegal arrest and an illegal investigative detention. *Zavala,* 134 Idaho at 535, 5 P.3d at 996. It is the defendant's burden, however, to prove that a detention occurred. *State v. Page,* 140 Idaho 841, 843–44, 103 P.3d 454, 456–57 (2004). The inquiry is whether, under all the circumstances surrounding an encounter, a reasonable person would have felt free to leave or otherwise terminate the encounter. *Id.* In this case, the district court found that there was no detention before Tietsort consented to a search. In so finding, the district court rejected Tietsort's testimony about the officers' conduct, and instead credited the officers' testimony that they had not detained Tietsort until after receiving his consent. We defer to this finding of fact, which is supported by substantial and competent evidence, and this claim of error fails.

### III.

### CONCLUSION

On this record, we cannot determine whether the challenged evidence was unconstitutionally obtained. The constitutional integrity of Tietsort's consent and of the subsequent warrant turns upon whether, in their initial, warrantless search of Tietsort's property, the detectives lawfully discovered any evidence of crime in open view. The district court's findings do not resolve this factual issue. We therefore vacate the order denying Tietsort's suppression motion and remand this case to the district court to make the necessary findings.

Chief Judge PERRY and Judge GUTIERREZ concur.

---

4. The findings in the district court's memorandum decision are insufficient and may evidence some confusion on the part of the court. The district court found that police were "able to observe the identification number on a white travel trailer parked under a canopy outside the barn from the outside." This is not, however, the trailer that the officers discovered to be stolen. The officers said that they had observed a white "fifth-wheel" or "travel" type trailer under an overhanging canopy attached to the outside of the barn, but the stolen trailer was a white "Cargo Plus utility trailer" parked inside the barn itself. Both trailers are shown in photos that were placed into evidence. Because the travel trailer was not stolen, the officers' observations about it would not have contributed to probable cause for a search warrant. Furthermore, a finding that the officers could see certain numbers "from the outside" of the barn does not *necessarily* mean that the officers were in an area where a reasonably respectful visitor would be.