859 P.2d 344

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Heather CLARK and Kimberly Schierman, Defendants–Appellants.**

**No. 20047.**

Court of Appeals of Idaho.

Aug. 19, 1993.

309

Gregory A. Jones, Kootenai County Public Defender; Penny E. Friedlander and Joel K. Ryan, Deputy Public Defenders, Coeur d'Alene, for defendants-appellants.

Larry EchoHawk, Atty. Gen., Thomas P. Watkins, Deputy Atty. Gen., Boise, for plaintiff-respondent.

LANSING, Judge.

In this case we are asked to reverse a district court's order affirming a magistrate's denial of the motions of defendants Heather Clark and Kimberly Schierman to suppress evidence of controlled substances and drug paraphernalia which they contend were found through an illegal search. The magistrate determined that no illegal search occurred. The magistrate's order denying suppression was affirmed by the district court. For the reasons that follow, we affirm.

The facts in this case were presented at the hearing on the defendants' suppression motions through the testimony of Deputy Soumas of the Kootenai County Sheriff's office. On February 21, 1990, Soumas and three other officers were dispatched to the town of Harrison to answer a complaint about a loud party possibly involving drugs and alcohol. The officers left for the area in two cars at 8:40 p.m., arriving at approximately 10:00 p.m. The officers parked about 80 yards from the defendants' residence, a mobile home. They heard loud voices and a stereo playing. Several vehicles were parked in the driveway of the residence. The officers walked down the driveway toward the home to investigate.

As Deputy Soumas approached the northeast corner of the mobile home by way of the horseshoe-shaped driveway, he saw windows at the corner of the dwelling. Soumas testified that he looked in one of the windows to assess the situation and to see how many occupants the officers would have to deal with, for the nearest law enforcement back-up was in Coeur d'Alene. From a distance of approximately one to three feet Soumas looked through the sheer draperies covering the window and observed a number of males seated around a table. One of the males bent over, his face close to the table, then sat up and said, "That's good speed," or words to that effect. Soumas immediately concluded that controlled substances were being used.

Two officers were then sent to the other side of the mobile home to cover the back door. Soumas and the remaining officer continued up the driveway toward the front door, shining flashlights in the vehicles as they passed to insure that there were no occupants. In a vehicle parked directly next to the front door of the residence, later found to be registered in Schierman's name, Soumas observed a deer-horn pipe of a type that he believed was used to smoke marijuana.

Soumas and the other officer then approached the front door of the residence, which was a sliding glass door. Opaque curtains covering the door were partially shut, but there remained a gap about six to twelve inches wide where the glass door was left uncovered. Through this uncovered portion of the door Soumas could see the same table he observed through the corner window and could see straws and a white powder lying on the table.

Soumas then knocked on the glass door. The defendant Clark answered, then turned and informed the other occupants that the police were present. Soumas observed one of the male occupants attempting to sweep the white powder off the table onto the floor. Soumas and the other officer then entered the residence.

During a cursory search of the residence the following items were found and seized: marijuana on a tray in the bathroom, a "bong pipe" with marijuana residue, white capsules on the floor of a bedroom, white powder on the kitchen counter and living room table, and straws and knives with white powder residue.

The two residents of the trailer, Clark and Schierman, were arrested and charged with possession of less than three ounces of marijuana, possession of drug paraphernalia, and frequenting a place of drug use. Clark and Schierman filed motions to suppress all evidence gathered following Deputy Soumas' initial observation at the corner window, including all statements made by the defendants, observations made by the officers before, during and after the arrests and any evidence seized in connection

with the arrests. As grounds for the motions, Clark and Schierman contended that Deputy Soumas had intruded upon the private curtilage of the mobile home when he looked through the window, and that his observation thus constituted an illegal search in violation of the United States and Idaho Constitutions. Following an evidentiary hearing, the magistrate denied Clark's and Schierman's motions.

Subsequently, a plea agreement was reached by which the charges of possession of marijuana were dismissed and Clark and Schierman entered conditional pleas of guilty to the remaining charges, reserving the right to appeal the denial of the suppression motions pursuant to I.C.R. 11(a)(2).

■■■ In a consolidated appeal from the magistrate's order denying the suppression motions, the district court affirmed. This appeal from the district court's disposition followed. Upon an appeal from a magistrate's decision we give due regard to the district court's determination, but we do not focus upon the analysis by the district court in its appellate capacity. Rather, we review the record before the magistrate independently of the district court's determination. *State v. Swartz*, 109 Idaho 1033, 712 P.2d 734 (Ct.App.1985). We defer to factual findings of the magistrate unless they are clearly erroneous, but exercise free review of a trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *State v. Weber*, 116 Idaho 449, 776 P.2d 458 (1989); *State v. Aitken*, 121 Idaho 783, 828 P.2d 346 (Ct.App.1992).

The state contends that it was lawful for Deputy Soumas to look in the corner window, and alternatively, even if that observation constituted an unlawful search, the subsequent separate observation through the glass door was legal and justified the interior search and the seizure of evidence.

On this appeal the defendants contend only that Deputy Soumas' initial observation of the mobile home through the corner window was an unconstitutional search. They do not separately challenge the propriety of his later observation through the gap in the curtains on the front door, nor do they dispute that the attempted destruction of evidence observed by Deputy Soumas through the front door created an exigent circumstance that justified entry and seizure of the evidence. Although not well-articulated in their brief on appeal, it appears that they contend the seized evidence should be suppressed because the observation through the front door and all subsequent observations and seizures were the "fruit of the poisonous tree"[1]—products of the initial allegedly illegal search through the corner window. By limiting their argument in this way, the defendants acknowledge that the evidence ought to have been suppressed only if Deputy Soumas conducted an unlawful search when he looked through the corner window.

■■■ Searches conducted without warrants are presumptively unreasonable and violative of the Fourth Amendment of the U.S. Constitution and Article I, § 17 of the Idaho Constitution. Therefore, because Deputy Soumas had no warrant, his view through the corner window was lawful only if it either did not constitute a "search" or fell within a recognized exception to the warrant requirement.

■■■ Both parties here urge application of a "plain view" analysis. Under the plain view doctrine enunciated by the United States Supreme Court, warrantless seizures are permitted if two requirements are satisfied: (1) the officer must lawfully make an initial intrusion or otherwise properly be in a position to observe a particular area, and (2) it must be immediately apparent that the items observed are evidence of a crime or otherwise subject to seizure. *Horton v. California* 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).[2] How-

---

1. *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963).

2. An additional requirement—that the discovery of incriminating evidence must be inadvertent—was once recognized, e.g., *Texas v. Brown,* 460

U.S. 730, 737, 103 S.Ct. 1535, 1540, 75 L.Ed.2d 502 (1983); *Coolidge v. New Hampshire,* 403 U.S. 443, 469–71, 91 S.Ct. 2022, 2040–41, 29 L.Ed.2d 564 (1971) (opinion of Stewart, J.), but that element has been eliminated by the deci-

ever, we conclude that the plain view doctrine is not the proper framework for analysis of Deputy Soumas' observation through the corner window, for the plain view doctrine addresses the validity of warrantless *seizures*, not searches.

In *Horton v. California, supra,* the United States Supreme Court clarified that the plain view doctrine is a constitutionally recognized justification only for warrantless seizures, not warrantless searches:

> The right to security in person and property protected by the Fourth Amendment may be invaded in quite different ways by searches and seizures. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property. The "plain view" doctrine is often considered an exception to the general rule that warrantless searches are presumptively unreasonable, but this characterization overlooks the important difference between searches and seizures. If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy. A seizure of the article, however, would obviously invade the owner's possessory interest. If "plain view" justifies an exception from an otherwise applicable warrant requirement, therefore, it must be an exception that is addressed to the concerns that are implicated by seizures rather than by searches. (Citations omitted.)

496 U.S. at 133–34, 110 S.Ct. at 2306. This clarification is consistent with Justice Rehnquist's analysis in *Texas v. Brown,* 460 U.S. 730, 738 n. 4, 103 S.Ct. 1535, 1541 n. 4, 75 L.Ed.2d 502 (1983):

> It is important to distinguish "plain view," as used in *Coolidge* to justify *seizure* of an object, from an officer's mere observation of an item left in plain view. Whereas the latter generally involves no Fourth Amendment search ..., the former generally does implicate the

Amendment's limitations upon seizures of personal property. (Citations omitted.)

Thus, the plain view doctrine refers only to the circumstances where an officer has a prior justification for an intrusion into a constitutionally protected area or activity and in the course of that intrusion spots and seizes incriminating evidence. Examples of such prior justifications include a search warrant for another object, hot pursuit, and a search incident to an arrest. *See Coolidge v. New Hampshire,* 403 U.S. 443, 465–66, 91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971) (opinion of Stewart, J.). Accordingly, it is warrantless *seizures* of readily visible items, not warrantless *searches,* that are limited by the criteria delineated under the plain view doctrine.

█ The validity of a law enforcement officer's mere observation of objects or activities requires a different analysis. If the officer intruded into an area where a privacy interest exists in order to gain the view, the intrusion must be justified by one of the recognized exceptions to the warrant requirement. *E.g., Lorenzana v. Superior Court of Los Angeles County,* 9 Cal.3d 626, 108 Cal.Rptr. 585, 511 P.2d 33 (1973). However, a policeman's mere observation from a vantage point that does not infringe upon a privacy interest, of something open to public view, normally implicates no Fourth Amendment constraints because observation of items readily visible to the public is not a "search." The Fourth Amendment protects only places or activities in which the individual holds a reasonable expectation of privacy. "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz v. United States,* 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967). *See also* 1 LaFAVE, SEARCH AND SEIZURE, § 2.2(a) (2nd Ed.1987).

sion in *Horton. State v. Claiborne,* 120 Idaho 581, 586 n. 2, 818 P.2d 285, 290 n. 2 (1991). Our Supreme Court has not determined whether this inadvertent discovery element is also eliminated

as a requirement for a plain view warrantless seizure under Article I, § 17 of the Idaho Constitution. That issue is not before this Court in the instant case.

■ This Court and others have used the term "open view doctrine" to refer to this rule that no Fourth Amendment "search" occurs where a law enforcement officer observes incriminating evidence or unlawful activity from a non-intrusive vantage point. *State v. Ramirez*, 121 Idaho 319, 322, 824 P.2d 894, 897 (Ct.App.1992) (officer's view into a car in a public parking lot); *State v. Limberhand*, 117 Idaho 456, 462, 788 P.2d 857, 863 (Ct.App.1990) (view in public restroom); *State v. Seagull*, 95 Wash.2d 898, 632 P.2d 44 (1981) (while walking to rear door of residence in search of occupant, officer saw what he thought to be marijuana growing in a nearby greenhouse); *State v. Kaaheena*, 59 Haw. 23, 575 P.2d 462 (1978) (activities not in open view where police had to climb on crate and look through one-inch hole in closed blinds). The "open view" terminology distinguishes the analysis applicable to warrantless observations from the legally distinct "plain view" doctrine applicable to seizures.[3]

The open view analysis must be applied to determine whether Deputy Soumas' view through the corner window was an unreasonable search prohibited by the Fourth Amendment.[4] The question thus presented is whether Deputy Soumas intruded upon a constitutionally protected privacy interest when he peered through the corner window of the mobile home. If his vantage point was not within a constitutionally protected area, his observation using only his normal vision to see that which was open to public gaze, was permissible under the open view doctrine.

The defendants assert that they had a reasonable expectation of privacy regarding the activities within their home which was breached by the officer because (1) the officer allegedly intruded onto the private curtilage of their home in order to look through the window and (2) they had curtains covering the windows.

■ We consider first Clark's and Schierman's argument that the officer's entry onto the curtilage of their home was impermissibly intrusive. Courts have historically extended Fourth Amendment protection to the curtilage, which is "the area or buildings immediately adjacent to a home which a reasonable person may expect to remain private even though it is accessible to the public." *State v. Rigoulot*, 123 Idaho 267, 846 P.2d 918, 923 (Ct.App.1992). *See also Oliver v. United States*, 466 U.S. 170, 104 S.Ct. 1735, 80 L.Ed.2d 214, (1984); *quoting Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

■ The officers did venture onto the curtilage in approaching the defendants' residence by way of the driveway. However, the presence of a police officer within the curtilage does not, *ipso facto*, result in an unconstitutional intrusion. There is an implied invitation for the public to use access routes to the house, such as parking areas, driveways, sidewalks, or pathways to the entry, and there can be no reasonable expectation of privacy as to observations which can be made from such areas. Like other citizens, police with legitimate business are entitled to enter areas of the curtilage that are impliedly open to public use. *State v. Rigoulot, supra; Lorenzana v. Superior Court of Los Angeles County, supra.* LaFAVE, SEARCH AND SEIZURE, § 2.3(c).

■ Police officers without a warrant are permitted the same intrusion and the same level of observation as one would expect from a "reasonably respectful citizen." *State v. Limberhand*, 117 Idaho at 462, 788 P.2d at 863; *State v. Seagull*,

---

3. An open view observation alone, absent exigent circumstances or other Fourth Amendment justification, does not authorize a warrantless seizure or entry into an area where a privacy interest does exist. However, what is seen in open view may furnish probable cause for obtaining a warrant. *Texas v. Brown*, 460 U.S. at 738 n. 4, 103 S.Ct. at 1541 n. 4; LaFave, *supra*.

4. A plain view analysis would be appropriate if the defendants were challenging the validity of the seizure of evidence inside the residence without regard to Deputy Soumas' view through the corner window. However, because the defendants here concede that the officers lawfully gained entry and legally made the seizures, unless those actions were tainted by the allegedly illegal observation through the window, there is no occasion to apply a plain view analysis.

*supra.* This Court recently stated that even a "no trespassing" sign,

> cannot reasonably be interpreted to exclude normal, legitimate inquiries or visits by mail carriers, newspaper deliverers, census takers, neighbors, friends, utility workers and others who restrict their movements to the areas of one's property normally used to approach the home ... A criminal investigation is as legitimate a societal purpose as any other undertaking that would normally take a person to another's front door.

*State v. Rigoulot,* 123 Idaho at 272, 846 P.2d at 923. However, a substantial and unreasonable departure from the normal access route will exceed the scope of the implied invitation and intrude upon a constitutionally protected privacy interest. *State v. Seagull, supra.*

Here Deputy Soumas was pursuing a legitimate police purpose—investigating a complaint of an excessively loud party. Therefore, he was justified in entering the curtilage. That does not end our inquiry, however, for his view through the corner window would still constitute an unlawful search if Soumas unreasonably strayed from the normal access route to the front door. Therefore, we must examine the magistrate's findings regarding Soumas' position when he made the observation and determine whether the findings are supported by substantial evidence.

Appellate review in this case is made difficult by the inadequacy of the record before us and imprecision in the magistrate's findings and conclusions. We cannot ascertain from either the evidence or the magistrate's findings exactly where Deputy Soumas was standing when he looked through the window. As noted above, the officers approached the house by a horseshoe-shaped driveway. This was apparently the normal, in fact the only, access to the front entry. Deputy Soumas testified that there were several vehicles parked in the driveway and that he had to skirt the vehicles. He also said that he was standing from one to three feet from the corner window when he made his obser-

vation. However, the transcript is unclear as to whether he was on or off of the driveway or parking area at that time. Soumas made a chalkboard diagram at the hearing and repeatedly referred to it to illustrate his path of approach and his location when looking in the window. The diagram was not preserved for the record on appeal. We are thus left with an ambiguous transcript.

The magistrate's findings and conclusions, rendered orally from the bench,[5] do not clarify the ambiguity of the evidentiary record. His findings focus primarily upon the legality of officers' later view through the sliding glass door and the warrantless entry and search of the interior, none of which actions are directly challenged on this appeal except to the extent that they are alleged to be impermissible products of the earlier observation through the corner window. With respect to that initial observation the magistrate stated:

> The home is a mobile home with a horseshoe type shaped driveway. He approached the northeast corner of the mobile home where there were two windows, one on each corner. He could see through the sheer draperies when he was about one to three feet away from the windows. Testified [sic] that he wanted to look inside to see how many people were in there. Since there were only four officers, he wanted to assess the situation and see what they were up against.
>
> In order to go to the window it did require him to alter his course that he was taking in going towards the front door. He looked into the window and saw some males seated around a table. One of the males inside bent over, his face to the table, and he spun around and said "That's good speed" or words to that effect. And Officer Soumas continued towards the door of the mobile home....
>
> When he looked in the window, it was not for the purpose of searching, but rather, in my opinion, a reasonable exer-

---

5. Neither the state nor the defendants requested written findings and conclusions.

cise in caution attempting to determine just exactly what was in store and what they were up against.

The magistrate's ultimate conclusion was that there had been no constitutionally prohibited search or seizure. This conclusion of law was reached without expression of the specific factual findings that support it with respect to the view through the corner window. Direct findings stating where the officer was standing—whether it was on or off the driveway; if off, how far off; which window he looked through; etc.— would have allowed more meaningful appellate review.

Although clarification from the magistrate would be helpful, we are without authority to remand for further findings of fact. In *State v. Kirkwood*, 111 Idaho 623, 726 P.2d 735 (1986) our Supreme Court reversed this Court's decision [6] remanding a case to the trial court for findings of fact on a suppression motion. The Supreme Court stated that where neither party has requested written findings under I.C.R. 12(d) we should examine the record to determine the "implicit" findings which would support the trial judge's order. "[T]he implicit findings of the trial court ... should be overturned only if not supported by substantial evidence." *Id.* at 625, 726 P.2d at 737. The Court further stated that all presumptions favor the trial court's exercise of the power to weigh the evidence and to draw factual inferences. "[T]he trial court's findings on such mat-

ters, *whether express or implied*, must be upheld if they are supported by substantial evidence." *Id.* (emphasis supplied), *quoting People v. Lawler*, 9 Cal.3d 156, 107 Cal.Rptr. 13, 15, 507 P.2d 621, 623 (1973). Accordingly, we will examine the record to determine whether there is substantial evidence to support an implicit finding that Deputy Soumas was on the normal access route to the front door or sufficiently near it to be within an area impliedly open to the public, and therefore, outside of the zone where privacy could reasonably be expected by the defendants.[7] In conducting this review, we bear in mind that it is an appellant's burden to establish a record and to preserve it on appeal to substantiate his or her contentions before the appellate court. *State v. Sima*, 98 Idaho 643, 570 P.2d 1333 (1977); *State v. Murinko*, 108 Idaho 872, 702 P.2d 910 (Ct.App.1985).

As noted above, the testimony showed that Deputy Soumas walked toward the house on a driveway that went up to the front entry. This evidence adequately supports the magistrate's implied finding, unless other evidence shows that the officer strayed significantly from the driveway and intruded upon an area of the curtilage to which the public was not impliedly invited. We have in the record a photograph introduced by the defendants showing one end of the mobile home. The photo shows three corner windows, but the record does not establish which of these was used by Deputy Soumas to view the interior. The

---

**6.** *State v. Kirkwood*, 110 Idaho 97, 714 P.2d 66 (Ct.App.1986).

**7.** We encounter difficulty following the Supreme Court's directive in *Kirkwood* because in reality, it requires that we imply not only the trial court's findings of fact but also it's legal analysis. As Justice Bistline observed in his dissenting opinion in *Kirkwood*,

Where the reasons [for the trial court's decision] are neither obvious nor stated, the appellate court is left to speculate about the trial court's perception of the law and knowledge of the facts. As a practical matter, the appellate court finds itself locked into a result-oriented review.

In the present case, the magistrate may have reached his decision by (1) a finding of fact that the officer was in an area where the public was

implicitly invited, or (2) by finding as a fact that the officer was off the area open to the public but also concluding as a matter of law that he nonetheless had the right to be there because the need to determine how many people were inside legally justified an intrusion onto the private curtilage. If the former, the factual finding would be entitled to deference on appellate review, and would support a conclusion under the open view doctrine that there was no prohibited search. If the latter, we would ordinarily freely review the legal conclusion component, which is at least questionable in the context of a loud party call. However, under the *Kirkwood* directive, we imply findings of fact that would support the result reached under a proper application of the open view doctrine, and then search the record to determine whether it contains substantial evidence to support the implied findings.

photo shows that there is no fence, sidewalk, curb or other structure creating a clear line of demarcation between the graveled driveway and "lawn." The gravel and grass shown in the photo intermix to such a degree that one cannot say where one ends and the other begins. Soumas testified he was one to three feet from the window when he made his observations. The photo shows that in one location near one of the corner windows, there is gravel within two or three feet of the mobile home. The photo does not establish that Deputy Soumas had to leave the access route to the front door in order to make his observations.

The magistrate found that the officer "altered his course" to see through the window, but that does not necessarily mean the officer impermissibly intruded onto the private curtilage. First, even on the altered course, he may have remained on the driveway. Second, police officers are not required to adhere to only the most direct route possible. They are permitted the same range of deviation that could reasonably be expected of other respectful citizens approaching the residence. As the Supreme Court of Washington noted, "[I]t would be unreasonable to require, in every case, that police officers walk a tightrope while on private property engaging in legitimate police business." *State v. Seagull*, 632 P.2d at 49 (officer walking from front door to rear door of residence in search of occupant did not intrude on privacy expectation merely because he did not take the most absolutely direct route between the two doors).

Soumas testified that there were several vehicles parked in the driveway and that skirting them took him along one edge of the driveway. That evidence does not detract from a conclusion that he remained on or reasonably near the area open to the public. If going around the vehicles required the officer to step off of the driveway, that departure from the normal access path would not be unreasonable, nor should it be unexpected by the residents who permitted the parked cars to block the driveway. Absent evidence that he went

beyond that area that the defendants should reasonably have expected members of the public to use in approaching the house or in alighting from automobiles that they might park on the driveway, we cannot say that Soumas' altered route impermissibly intruded upon the defendants' privacy.

Upon a complete review of the record we find that there was substantial evidence to support the magistrate's implied finding that Deputy Soumas did not intrude upon the private curtilage. While there may have been contrary evidence presented at the suppression hearing, it has not been adequately preserved in the record to permit a conclusion that the magistrate's implied finding was clearly erroneous.

 We turn next to the defendants' second contention—that a legitimate expectation of privacy was created by hanging sheer curtains on the window. We cannot agree with the defendants' argument, for use of a sheer curtain did not shield the interior from view. Soumas testified that the interior of the trailer was readily visible even though the transparent curtains were drawn. To be accorded Fourth Amendment protection, an expectation of privacy must be objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Katz v. United States*, 389 U.S. at 360, 88 S.Ct. at 516 (Harlan, J. concurring); *State v. Thompson*, 114 Idaho 746, 760 P.2d 1162 (1988). Regardless of what their subjective intent may have been, these defendants could not have reasonably expected that sheer curtains would prevent passers-by from seeing inside, particularly at times when, as on the night in question, the interior of the home was lighted and the exterior was in darkness. As Mr. Justice Harlan observed in *Katz*, 389 U.S. at 361, 88 S.Ct. at 516 (Harlan, J., concurring):

> [A] man's home is, for the most purposes, a place where he expects privacy, but objects, activities, or statements that he exposes to the "plain view" of outsiders are not "protected because no intention to keep them to himself has been exhibited."

*See also Commonwealth v. Busfield,* 242 Pa.Super. 194, 363 A.2d 1227 (1976). Clark and Schierman could have maintained privacy by using opaque curtains or blinds, but failed to do so. A reasonable expectation of privacy sufficient to invoke the protections of the Fourth Amendment was not established by their use of sheer window coverings. The defendants have not shown that the officer intruded upon a constitutionally protected privacy interest when he looked in the corner window. Therefore we find no error in the magistrate's denial of the suppression motions.

Having concluded that Deputy Soumas' observation through the corner window was not a constitutionally proscribed search, we need not consider the state's alternative argument that even if the corner window view was an unlawful search, the later view through the glass door was an independent lawful observation and not "fruit of the poisonous tree."

The order of the district court on appeal, affirming the magistrate's denial of the defendants' motions to suppress evidence, is affirmed.

WALTERS, C.J., and PERRY, J., concur.