**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40655**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2014 Unpublished Opinion No. 498** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: May 8, 2014** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **CHRISTOPHER WESTON HUDSON,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Darren B. Simpson, District Judge.

Order denying motion to suppress evidence, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.
_____

LANSING, Judge

Christopher Weston Hudson claims that the district court erred when it denied his motion to suppress evidence found in a van belonging to a family member. His claim of error has two parts. He argues that the search of the van was constitutionally tainted by a prior unconstitutional investigatory detention. He also argues that the plain view exception to the warrant requirement is inapplicable to his case.

**I.**

**BACKGROUND**

Senior Patrol Officer Peter Klepich observed Hudson while on a routine, daytime patrol of a high-crime area of Idaho Falls. According to Klepich, upon seeing the patrol car approaching, Hudson and another man turned their heads and shoulders such that their backs were toward the officer. Klepich found this behavior suspicious and believed that the movement was an attempt to avoid being identified. Klepich continued past them in his vehicle, but then

1

turned around to drive by again. At that time, he observed Hudson and the other man running down an abutting street. Klepich followed them, but lost sight of them after they entered the grounds of an apartment complex. At that point, Klepich exited his vehicle and searched for the men on foot, eventually finding Hudson crouched, hiding behind a planter in front of the apartment buildings. Klepich asked Hudson what he was doing, and Hudson responded, "What? There's nothing going on here." Hudson was perspiring, looked nervous, and attempted to walk away from the officer. Klepich detained Hudson, handcuffing him and explaining that he was going to continue detaining Hudson until he "could sort out what was going on."

Other officers arrived on scene as Klepich continued his investigation. Klepich frisked Hudson, finding a knife. Klepich also communicated with police dispatch, who informed Klepich that there was a warrant for Hudson's arrest and relayed a 911 request that the police investigate a van parked nearby.

Officers walked over to the van and looked though the van's windows. Inside, they saw a glass pipe with white residue inside, protruding from a partially-opened camera bag. Klepich believed the pipe had been used to smoke methamphetamine. Attempting to locate the owner of the vehicle, Klepich went to the home adjacent to the area where the van was parked. A resident of that home came to the door, but denied that the van belonged to her. Officers ran a records search and the owner of the vehicle was neither the nearby resident nor Hudson.[1] Thereafter, the officers opened the van doors and searched the interior of the van, finding methamphetamine, another pipe, scales, and Hudson's wallet containing his identification card. Klepich spoke with Hudson, who denied having anything to do with the vehicle. Nonetheless, Klepich arrested Hudson.

Hudson was charged with trafficking in methamphetamine, Idaho Code § 37-2732B(a)(4), and injury to the jail, I.C. § 18-7018. He moved to suppress the evidence found in the van based upon violations of the Fourth Amendment to the United States Constitution and Article 1, Section 17 of the Idaho Constitution. After a hearing, the district court denied the suppression motion. Hudson entered a conditional guilty plea, preserving his right to appeal the denial of his suppression motion, in exchange for a dismissal of the injury to a jail charge. The

---

[1]     The van belonged to Hudson's grandmother although this fact was not immediately apparent to officers on scene because Hudson and his grandmother do not share the same last name.

court imposed a unified sentence of twelve years' imprisonment with two years fixed. Hudson appeals the denial of his suppression motion.

## II.

## ANALYSIS

Hudson first asserts that the evidence found in the van must be suppressed under the "fruits of the poisonous tree" doctrine. He argues that Officer Klepich's detention of Hudson was unconstitutional and that the evidence found in the van was the "fruit" of that detention. Second, he argues that the district court erred by holding that officers were permitted to search the van pursuant to the plain view exception to the warrant requirement.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## A.    The Stop Was Justified by Reasonable and Articulable Suspicion

Hudson's first claim is that the evidence discovered in the van is the fruit of an unconstitutional investigative detention. He argues that police were not permitted to initiate an investigative detention because they had only a hunch, not reasonable and articulable suspicion.

Ordinarily, the determination of whether an investigative detention is reasonable requires a dual inquiry--whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). Here, Hudson's claims relate solely to the first inquiry, the inception of the detention. An officer is permitted to initiate an investigative detention if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003).

Here, the officer's stop was justified by four factors: the high-crime area, Hudson's turning behavior indicating that he was concerned that he might be identified by police, his unprovoked, headlong flight, and his hiding from the officer. We conclude that these factors provided the officer with sufficient suspicion upon which to base an investigatory detention.

In *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), the United States Supreme Court reasoned that "Headlong flight--wherever it occurs--is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." Accordingly, it held that a defendant's unprovoked flight, in a high-crime area, created reasonable and articulable suspicion justifying investigative detention. Here, in addition to those factors, the turning and hiding conduct exhibited "unusual interest in or concern" with the presence of police officers and that sort of conduct "may contribute to reasonable suspicion." *State v. Nevarez*, 147 Idaho 470, 475, 210 P.3d 578, 583 (Ct. App. 2009).

Because we conclude that the stop was not unconstitutional, fruits of the poisonous tree analysis is inappropriate.

**B.    The Search of the Van Was Constitutional**

Hudson argues that the district court erred when it found that the search of the vehicle was permitted under the plain view exception to the Fourth Amendment prohibition of unreasonable searches and seizures. Although we acknowledge that the terminology used by the district court was not precisely correct, we affirm because the district court's decision was correct in substance.

The Idaho Supreme Court has distinguished the open view doctrine from the plain view exception:

> The plain view exception allows police officers to make warrantless *seizures* of evidence viewed from a location where the officer has a right to be. Thus, the plain view exception applies to warrantless *seizures* of readily visible items, not warrantless searches. Warrantless searches are properly analyzed under the open view doctrine.
>
> Under the open view doctrine, a police officer's observations made from a location open to the public do not constitute a *search*. This is because one cannot have a reasonable expectation of privacy in what is knowingly exposed to public view.

*State v. Christensen*, 131 Idaho 143, 146, 953 P.2d 583, 586 (1998) (internal citations omitted) (emphasis added).

Under those definitions, the plain view exception did not justify the officer's *entry* into the vehicle in this case. The plain view exception applies "only to the circumstances where an officer *has a prior justification for an intrusion* into a constitutionally protected area or activity and *in the course of that intrusion* spots and seizes incriminating evidence." *State v. Clark*, 124 Idaho 308, 312, 859 P.2d 344, 348 (Ct. App. 1993) (emphasis added).[2] Thus, the plain view doctrine would justify the seizure of evidence only if some other warrant exception justified the officer's entry into the van.

That justification for entry was provided by the open view doctrine combined with the automobile exception to the warrant requirement. The open view doctrine permitted the officer to look into the van because "a policeman's mere observation from a vantage point that does not infringe upon a privacy interest, of something open to public view, normally implicates no Fourth Amendment constraints because observation of items readily visible to the public is not a 'search.'" *Clark*, 124 Idaho at 312, 859 P.2d at 348. Here, both requirements of the open view doctrine are met. First, the officer stood outside of the van when looking through the windows of the van. The officer was lawfully permitted to stand in that place; therefore, he reached his vantage point without infringing upon a privacy interest. Second, the inside of the car was exposed to public view because the officer could see the paraphernalia through the window. "There is no legitimate expectation of privacy, shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Texas v. Brown*, 460 U.S. 730, 740 (1983), *overruled on other grounds by Horton v. California*, 496 U.S. 128, 130 (1990) (internal citations omitted). Because both prongs of the open view analysis have been met, we conclude that looking into the van was not a "search" for Fourth Amendment purposes.

The open view doctrine, standing alone, would be insufficient to support the officer's later entry into the van and search of the contents of the van. As stated in *Clark*, "[a]n open view observation alone, absent exigent circumstances or other Fourth Amendment justification, does not authorize a warrantless seizure or entry into an area where a privacy interest does exist."

---

[2] The plain view exception is often applied when officers enter a home pursuant to a warrant and see contraband that is not within the scope of the warrant. *See, e.g.*, *State v. Claiborne*, 120 Idaho 581, 587, 818 P.2d 285, 291 (1991). In those cases, the warrant grants the officer the right to be in the home and the plain view exception authorizes the seizure of the contraband viewed during the execution of the warrant. *Id.*

*Clark*, 124 Idaho at 313 n.3, 859 P.2d at 349 n.3. The interior of a car is an area in which a person enjoys a privacy interest. *See State v. Gibson*, 141 Idaho 277, 282, 108 P.3d 424, 429 (Ct. App. 2005). Accordingly, the open view doctrine permits an officer to look into a vehicle, but does not permit him to enter the vehicle or search the vehicle. Nonetheless, the open view doctrine is important because "what is seen in open view may furnish probable cause." *Clark*, 124 Idaho at 313 n.3, 859 P.2d at 349 n.3.

Automobiles may be searched when an officer has probable cause to believe that the automobile contains contraband; a warrant is not required. *Gibson*, 141 Idaho at 281, 108 P.3d at 428. "The automobile exception is based both upon the automobile's ready mobility, which is deemed an exigency sufficient to excuse the warrant requirement once probable cause for the search is clear, and upon the lesser expectation of privacy in an automobile as compared to the privacy interest in a home." *Id.* at 281-82, 108 P.3d at 428-29; *see also California v. Carney*, 471 U.S. 386, 390-92 (1985); *State v. Bottelson*, 102 Idaho 90, 93, 625 P.2d 1093, 1096 (1981). "Probable cause is a flexible, common-sense standard. A practical, nontechnical probability that incriminating evidence is present is all that is required." *State v. Veneroso*, 138 Idaho 925, 929, 71 P.3d 1072, 1076 (Ct. App. 2003); *see also Brown*, 460 U.S. at 742. "The officer's determination of probable cause must be based on objective facts which would be sufficient to convince a magistrate to issue a warrant under similar circumstances." *Veneroso*, 138 Idaho at 929, 71 P.3d at 1076. Here, the officer's observation of paraphernalia furnished probable cause to believe that incriminating evidence was present, and therefore a warrantless search of the van was permitted under the automobile exception. Therefore, although the search of the van was not authorized by the plain view exception, it was authorized by the joint application of the open view doctrine and the automobile exception to the warrant requirement.[3]

## III.

## CONCLUSION

We conclude that the investigatory detention of Hudson was justified by reasonable and articulable suspicion. Accordingly, the search of the vehicle was not linked to an

---

[3] In the briefing, the parties also disputed whether Hudson had a privacy interest in the van. The State claimed, *inter alia*, that Hudson abandoned the van and therefore cannot claim that his privacy interest in the van was violated. Above, we conclude that even if Hudson enjoyed a privacy interest in the van, the search was constitutional. Therefore, we need not reach this additional issue.

unconstitutional detention.  We also conclude that the search of the vehicle was permitted under the joint application of the open view doctrine and the automobile exception to the warrant requirement.  Therefore, the judgment of the district court is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**