# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 45607

STATE OF IDAHO, )
)
        Plaintiff-Respondent, )        Boise, February 2019 Term
)
v. )        Opinion filed: March 28, 2019
)
DARRYL JOE ALBERTSON, )        Karel A. Lehrman, Clerk
)
        Defendant-Appellant. )

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Minidoka County, Hon. Jonathan P. Brody, District Judge.

The district court's order denying Albertson's motion to suppress is <u>affirmed.</u>

Eric Don Fredericksen, State Appellate Public Defender, Boise, for Appellant. Brian R. Dickson argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Jeffrey D. Nye argued.

_____

MOELLER, Justice.

Darryl Joe Albertson appeals from his judgment of conviction for possession of a controlled substance. In August 2016, a police officer approached Albertson's front door and observed through a window that he was smoking methamphetamine. Because he had a "no trespassing" sign posted near the opening to his property, Albertson argues that the officer's conduct constituted an unreasonable search under the Fourth Amendment to the United States Constitution and Article I, section 17 of the Idaho Constitution. Consequently, he asks this Court to reverse the district court's decision denying his motion to suppress the evidence. The State argues that the sign in question was insufficient to revoke the implied license for uninvited visitors to approach his home. For the reasons stated below, we affirm.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In early August 2016, the Cassia County Sheriff's Office received information from a local store that Albertson had purchased an inordinate amount of sulfur (two large bags). The purchase caused concern for law enforcement because sulfur can be used to produce bombs. As a

1

result, Captain Dan Kindig, who had known Albertson for some time, volunteered to speak with him about the purchase. Captain Kindig went to Albertson's home shortly after receiving the information, but Albertson was not there. Consequently, Captain Kindig returned on August 10, 2016, at which point he walked up to the porch and, as he approached Albertson's front door, saw Albertson through a window to the left. Captain Kindig testified that he observed Albertson sitting at a small table smoking an unknown substance from what appeared to be a "meth pipe."

Captain Kindig knocked on the door and Albertson answered. After inquiring about the sulfur, Captain Kindig informed him that the bigger problem was the meth pipe. Albertson reportedly responded: "It's not a problem because I'm on my own property and it's not against the law to smoke meth in my own house." He allegedly stated that his property was exiled from Minidoka County and existed in another state where methamphetamine was legal. After some further discourse, Captain Kindig obtained the pipe and arrested Albertson. Because the pipe tested positive for methamphetamine, Albertson was charged with possession of a controlled substance and possession of drug paraphernalia.

On November 29, 2016, Albertson filed a motion to suppress all the evidence on the grounds that his property was posted with a no trespassing sign and the State lacked probable cause to enter the premises without permission. The State conceded that a no trespassing sign had been posted on a power pole, but argued that the sign was insufficient to revoke the implied license because it was not well-placed and there were a number of obstacles to seeing it clearly. Captain Kindig testified that he did not notice the sign and that it was badly faded. Photographs of the property and the sign were admitted into evidence at the hearing. These photos were taken after Albertson was arrested. Captain Kindig testified that "honestly, I don't remember the trees being trimmed, but maybe they were. I don't know. But I can see they're all trimmed back now."

After the evidentiary hearing, the district court issued a written decision finding that "[t]here is no evidence Captain Kindig noticed the sign; it was not the most prominent or noticeable sign." After reviewing relevant case law, the district court concluded that "[t]he sign here is less prominent and is insufficient to revoke the implied license [to enter the curtilage[1] and approach the front door]". Consequently, the district court concluded that Captain Kindig's viewing of Albertson smoking what appeared to be methamphetamine through the window "did

---

[1] "The curtilage is that area immediately surrounding and associated with a residence in which a person has a reasonable expectation of privacy." *Christensen*, 131 Idaho at 147, 953 P.2d at 587.

not constitute a search under the Fourth Amendment." Accordingly, it denied Albertson's motion to suppress.

On October 16, 2017, pursuant to a binding plea agreement, Albertson entered a conditional plea of guilty to possession of a controlled substance.[2] The agreement required that Albertson receive a suspended sentence of no more than five years, with the first two years fixed, and be placed on probation for two years. Pursuant to the plea agreement, Albertson reserved the right to appeal from the district court's denial of his motion to suppress. That same day, a judgment of conviction was entered against him. Albertson timely appealed.

## II. STANDARD OF REVIEW

This Court conducts a bifurcated review when it considers a motion to suppress. *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005). This means that when a ruling on a suppression motion is challenged on appeal, "the Court accepts the trial court's findings of fact that are supported by substantial evidence, but freely reviews the application of constitutional principles to the facts as found." *State v. Page*, 140 Idaho 841, 843, 103 P.3d 454, 456 (2004).

## III. ANALYSIS

Albertson asserts that, by placing a single no trespassing sign on a power pole near the entrance to his driveway, he revoked the implied license for the public, including police officers, to approach his home. Thus, he argues that the officer's observations while on his front porch constituted an impermissible search under the Fourth Amendment to the United States Constitution and Article I, section 17 of the Idaho Constitution.[3] The State does not challenge the district court's conclusion that the officer entered the curtilage of Albertson's property, and it does not assert that an exception to the warrant requirement applies in this case. Rather, the State argues that, pursuant to the implied license and open view doctrines, no search occurred. Therefore, the State asserts that the officer did not violate Albertson's constitutional rights.

"Like the Fourth Amendment, the purpose of Art. I, § 17 is to protect Idaho citizens' reasonable expectation of privacy against arbitrary governmental intrusion. To this end, warrantless searches are presumed to be unreasonable unless the search can be justified under

---

[2] Albertson entered an *Alford* plea pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970).
[3] Albertson does not argue that the Idaho Constitution does or should provide more protection in this scenario than the United States Constitution. Instead, he asserts that "[t]he Idaho Constitution provides similar protections" to those provided by the Fourth Amendment to the United States Constitution and argues generally that his rights were violated under both constitutions.

one of the exceptions to the warrant requirement." *State v. Christensen*, 131 Idaho 143, 146, 953 P.2d 583, 586 (1998) (internal citation omitted). While the home, including its curtilage, is "first among equals" when it comes to constitutional protection from unreasonable searches and seizures, it is well established that a police officer may approach a home without a warrant and knock, as any private citizen may do. *Florida v. Jardines*, 569 U.S. 1, 6, 8 (2013). This notion has been termed the "implied invitation," *Christensen*, 131 Idaho at 147, 953 P.2d at 587, or "implied license" doctrine, *Jardines*, 569 U.S. at 10. Regarding this doctrine, we have stated:

> Although citizens have a reasonable expectation of privacy in the areas immediately surrounding their homes, not all areas of the curtilage are equal in terms of privacy.
>
> > [T]he presence of a police officer within the curtilage does not, *ipso facto*, result in an unconstitutional intrusion. There is an implied invitation for the public to use access routes to the house, such as parking areas, driveways, sidewalks, or pathways to the entry, and there can be no reasonable expectation of privacy as to observations which can be made from such areas. Like other citizens, police with legitimate business are entitled to enter areas of the curtilage that are impliedly open to public use.

*Christensen*, 131 Idaho at 147, 953 P.2d at 587 (quoting *State v. Clark*, 124 Idaho 308, 313, 859 P.2d 344, 349 (Ct. App. 1993)). However, "[t]he ability of police to move within the curtilage . . . is not unlimited. 'Police officers without a warrant are permitted the same intrusion and the same level of observation as one would expect from a reasonably respectful citizen.' " *Id.* (quoting *Clark*, 124 Idaho at 313, 859 P.2d at 349).[4]

We have also held that the implied license to enter the access routes to a home is revocable. It is deemed to be revoked where a reasonably respectful citizen would recognize that he or she is not welcome to approach the home. *Id.* Thus, where an officer's entry into the curtilage exceeds what would be expected of a reasonably respectful citizen, a search has occurred. However, where the officer's conduct in entering the curtilage conforms to that of a

---

[4] We acknowledge that this Court has adopted a more expansive interpretation of curtilage under Art. I, § 17 of the Idaho Constitution, than the Supreme Court of the United States has applied to the Fourth Amendment to the U.S. Constitution. For example, in *United States v. Dunn*, 480 U.S. 294, 301 (1987), the U.S. Supreme Court held: "Fourth Amendment protection extends to the 'curtilage' of a residence, which is the area or buildings immediately adjacent to a home that a reasonable person may expect to remain private even if accessible to the public." However, in Idaho, we recognize that "the curtilage of a home located within the city limits of Boise may not be the same as the curtilage of a ranch located in one of Idaho's rural counties." *State v. Webb*, 130 Idaho 462, 467, 943 P.2d 52, 57 (1997). Thus, "[a] trial court must . . . take into consideration the differences in custom and terrain within different areas of the state when contemplating particular expectations of privacy" surrounding a home. *Id.* The applicability of this distinction has not been raised by either side on appeal.

reasonably respectful citizen, his entry does not constitute a search for purposes of the Fourth Amendment and the Idaho Constitution. *Id.*

Further, under the open view doctrine, "a police officer's observations made from a location open to the public do not constitute a search. This is because one cannot have a reasonable expectation of privacy in what is knowingly exposed to public view." *Christensen*, 131 Idaho at 146, 953 P.2d at 586 (citing *Katz v. United States*, 389 U.S. 347 (1967)). Thus, if Albertson failed to revoke the implied license, neither the officer's entry onto Albertson's curtilage nor his subsequent observation of Albertson smoking methamphetamine through his window constituted a search under the Fourth Amendment or the Idaho Constitution.

With this understanding of the applicable law, we address Albertson's arguments in turn.

A. <u>We need not decide whether a single no trespassing sign is sufficient to revoke the implied license</u>.

Albertson argues that by adopting Idaho Code section 18-7008, which criminalizes trespassing, the Idaho legislature codified the principle that a single sign is adequate to revoke the implied license. In addition, he asks this Court to adopt the reasoning from a recent dissent in the Tenth Circuit Court of Appeals and hold that a "plain, simple, and appropriately" displayed no trespassing sign is sufficient to revoke the implied license. *See United States v. Carloss*, 818 F. 3d 988, 1014 (10th Cir. 2016) (Gorsuch, J., dissenting).[5]

We reject Albertson's argument regarding the applicability of Idaho Code section 18-7008, as it was written in 2016. *See* I.C. § 18-7008 (2014), *repealed by* 2018 Idaho Sess. Laws, ch. 350, § 6. Even assuming, *arguendo*, that the single sign provisions of 18-7008(A)(9)(c) and (d) were applicable, they are of no consequence to our Fourth Amendment analysis.[6] As the Supreme Court of the United States has explained, there is no constitutional nexus between criminal or civil trespass laws and Fourth Amendment jurisprudence:

> [I]t does not follow that the right to exclude conferred by trespass law embodies a privacy interest also protected by the Fourth Amendment. To the contrary, the common law of trespass furthers a range of interests that have nothing to do with

---

[5] Notably, the majority in *Carloss* flatly rejected the dissent's proposition that a single no trespassing sign is sufficient to revoke the implied license. *Carloss*, 818 F.3d at 995 ("As an initial matter, just the presence of a 'No Trespassing' sign is not alone sufficient to convey to an objective officer, or member of the public, that he cannot go to the front door and knock.").

[6] Idaho Code section 18-7008(A)(9)(a) uses the word "signs", while subsections (c)–(d) suggest that a "sign" is sufficient. This statute was repealed on July 1, 2018, and the relevant portions were re-designated as section 18-7008(2)(a)(i)–(iv). H.B. 658, 64th Leg., 2d Reg. Sess., 2018 Idaho Sess. Laws 829–30.

privacy and that would not be served by applying the strictures of trespass law to public officers.

*Oliver v. United States*, 466 U.S. 170, 184 n.15 (1984). In other words, trespass laws are not rooted in the same constitutional soil from whence the reasonable expectation of privacy standard has grown. *See Kyllo v. United States*, 533 U.S. 27, 34 (2001). Therefore, Idaho's trespass laws are not controlling in this case, which concerns the application of the Fourth Amendment to a controlled substance charge.

We decline to adopt the proposed rule from the dissent in *Carloss* at this time. Although the question of whether a single no trespassing sign is adequate to revoke the implied license is an issue of first impression in Idaho, we note that some Idaho cases have suggested that a lone no trespassing sign could be sufficient. *See Christensen*, 131 Idaho 143, 953 P.2d 583; *State v. Kapelle*, 158 Idaho 121, 344 P.3d 901 (Ct. App. 2014); *State v. Howard*, 155 Idaho 666, 315 P.3d 854 (Ct. App. 2013). In *State v. Christensen*, we stated:

> [I]t is not difficult to imagine circumstances where it would be entirely reasonable for a police officer, or for that matter any citizen, to ignore a no trespassing sign in order to approach a house. However, this case does not present such a set of circumstances. . . . Under these circumstances, [the officer] had no more right to ignore the no trespassing sign and closed gate than would a door-to-door solicitor.

131 Idaho at 148, 953 P.2d at 588. As a result, we do not foreclose the possibility that a single sign may be sufficient in some cases to revoke the implied license; however, it is not necessary for us to decide that question here because the sign at issue falls well short of being sufficient to do so, as discussed in the following section.

B. Under the *Christensen* standard, the no trespassing sign at issue was insufficient to revoke the implied license.

Albertson argues that the no trespassing sign he posted was visible and that it clearly conveyed to the public that he revoked the implied license for uninvited visitors to approach his home. Based upon the trial court's findings of fact, which are supported by substantial evidence in the record, we disagree. *See State v. McNeely*, 162 Idaho 413, 414–15, 398 P.3d 146, 147–48.

*State v. Christensen* is the seminal Idaho case addressing revocation of the implied license.[7] 131 Idaho 143, 953 P.2d 583. There, an officer was attempting to speak with a homeowner regarding nearby residents who were suspected of growing marijuana. *Id.* at 145,

---

[7] Although the district court did not cite *Christensen* in its decision denying Albertson's motion to suppress, both sides on appeal appropriately recognize it as controlling precedent.

953 P.2d at 585. When he came upon a closed but unlocked gate blocking the driveway, the officer stepped over or around it and proceeded to the home. *Id.* A no trespassing sign was posted on the gate. *Id.* The State focused on the lack of a fence or other barrier to entry and argued that the closed gate and sign were "insufficient to create a reasonable expectation that no reasonably respectful citizen would approach the house." *Id.* at 147, 953 P.2d at 587.

In rejecting the State's arguments, the Court explained that,

> [w]e do not believe that the ability to exclude the public is available only to those Idaho citizens with the resources to construct extensive fencing. We note that this is not a case where the message to the public was ambiguous. The no trespassing sign was clearly posted on a gate across the only public access to the property. In light of this unambiguous message, it is unclear what the presence of a fence would add.

*Id.* Accordingly, we determined that "the reasonably respectful citizen when confronted with a closed gate *and* a no trespassing sign does not proceed further, but respects the request for privacy that such efforts convey." *Christensen*, 131 Idaho at 147, 953 P.2d at 587 (emphasis added). As a result, we held that the officer's conduct in crossing the gate in an attempt to speak with the homeowner constituted an unreasonable search. *Id.*

As we stated in *Christensen*, homeowners need not "convert the areas around their homes into the modern equivalent of a medieval fortress in order to prevent uninvited entry by the public, including police officers." *Id.* However, to revoke the implied license, a person must convey a clear and unambiguous message that he wishes to preclude uninvited guests from approaching his home. *Id.* The question is what a reasonably respectful citizen would understand from the message. Thus, the test for whether an implied license to enter is effectively revoked isan objective one.

There is abundant evidence in the record supporting the district court's conclusion that Albertson failed to effectively revoke the implied license. For example, the officer testified regarding the sign that: "It's on the power pole. . . . [I]t's probably . . . . 11 by 14? 8 by 12, something like that . . . . One of the little ones." Although he noted that "you can still read [the sign]," he also testified that it is "black and faded out," and that "you've got to get pretty close to see those letters." Photographs that Albertson offered as exhibits at the suppression hearing support the officer's testimony. It is hardly legible, except upon close examination. The pictures reflect that the sign is small, almost completely blackened, and has faded lettering that can barely be discerned to read: "Private Property No Trespassing." Indeed, even if the sign were visible in

7

the sense that one could see it posted on the power pole, it is so dark and faded that it is difficult to read from even a close vantage point. Therefore, the officer's testimony concerning the sign is objectively reasonable and consistent with the photographic evidence.[8]

In addition, the photographic evidence in the record further establishes that, unlike the sign in *Christensen*, the sign here was not posted across the public access way or the path to the home. Rather, it is on a power pole in the northwest corner of Albertson's property. The sign wraps around the portion of the power pole that faces the interior of Albertson's property, rendering it difficult for visitors to clearly see from the road. Because it faces north, it would likely only be noticeable to a person who is traveling from the south. In fact, the sign faces directly away from a wooded area and a canal—not Albertson's home. Consequently, a reasonably respectful citizen could conclude that Albertson was attempting to keep people out of the trees and canal, as opposed to preventing them from approaching his front door. Finally, even if the sign were legible from a reasonable distance, the posting of the notice on a power pole, as opposed to a post or landmark clearly owned by Albertson, is less conspicuous and sends an ambiguous message as to whether the content of the sign was even applicable to Albertson's home. Thus, even if a lone sign may be sufficient to revoke the implied license, the placement and dilapidated condition of the sign at issue render it insufficient to do so under *Christensen*.

In sum, we conclude that the sign at issue here did not convey a clear and unambiguous message to the public to refrain from approaching Albertson's property. Thus, Albertson failed to revoke the implied license for the public, including police officers, to approach his home. As a result, the officer was in a location open to the public when he observed Albertson smoking methamphetamine in open view, and, therefore, no search occurred for purposes of the Fourth Amendment or the Idaho Constitution. Accordingly, we hold that the district court did not err in denying Albertson's motion to suppress.

## IV.    CONCLUSION

We affirm the district court's decision denying Albertson's motion to suppress.

---

[8] We note that, although the test is an objective one, if an officer is actually aware that a person has acted to revoke the implied license, he would not be free to approach the home. That is not the case here, as the officer testified that he did not see the no trespassing sign until a week after he arrested Albertson. Further, although the district court assumed that the officer *could have* seen the sign, it acknowledged that "there is no evidence that [the officer] noticed the sign" before approaching Albertson's home on August 10, 2016.

Chief Justice BURDICK, and Justices BEVAN, STEGNER and Justice Pro Tem TROUT **CONCUR.**